

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSEPH CARAVELLO,

                            Plaintiff,

        -against-

UNITED PARCEL SERVICE, and DAN LATERZA
(sued in his individual and official capacity pursuant to
New York Executive Law §290, et seq.),

                            Defendants.
------------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **OCT 27 2014** ★

LONG ISLAND OFFICE

CV:

**COMPLAINT**

**JURY TRIAL DEMANDED**

CV 14 6279
SPATT, J.
LINDSAY, M.

Plaintiff, Joseph Caravello, by his attorneys SCOTT MICHAEL MISHKIN P.C.,

complaining of the defendant, alleges as follows:

**PRELIMINARY STATEMENT**

This case is brought for a money judgment for actual, punitive, compensatory and

emotional damages suffered by Joseph Caravello (Plaintiff), as a result of Defendant United

Parcel Service's (UPS) continuous retaliatory adverse treatment against Plaintiff because of

Plaintiff's protected activity of filing and settling a complaint of discrimination based on

Plaintiff's disability in violation of 42 U.S.C. §§ 12111 et seq., the Americans With Disabilities

Act (ADA), and in violation of NYEL §§ 290 et seq., (NYEL); and for Dan Laterza's (Laterza),

in his individual and official capacity, aiding, abetting, inciting, compelling and/or coercing the

conduct giving rise to Plaintiff's retaliation claims based on the Plaintiff's protected activity of

complaining of disability discrimination in violation of NYEL.

## JURISDICTION

FIRST:         The jurisdiction of the Court over this controversy is based upon

28 U.S.C. §1331, as this matter is raised under 42 U.S.C. §§ 12101 *et seq.*

SECOND:        The Court also has supplemental jurisdiction over this case pursuant to

28 U.S.C. §1367 (a), as Plaintiff's NYEL claims form part of the same case and controversy.

## VENUE

THIRD:         The unlawful practices alleged below were committed within Suffolk

County in the State of New York.

FOURTH:        At the time of the unlawful practices, plaintiff was a resident of Suffolk

County in the Eastern District of the United States District Court of New York.

FIFTH:         Defendant, UPS conducted business at its facility at 75 Smith Street,

Farmingdale, in the Eastern District of the United States District Court of New York.

SIXTH:         This court is hereby the proper venue under 28 U.S.C. §1391(b).

## PARTIES

SEVENTH:       Plaintiff is employed by UPS as a truck driver, responsible for the delivery

and picking up of packages from homes and businesses in the Huntington Bay area of Long

Island.

EIGHTH:        Plaintiff has been employed by UPS as a driver since 2004.

NINTH:         Plaintiff was and is an "employee" as defined by the ADA, and NYEL.

TENTH:         At all times relevant to this action, UPS was and is the "employer" of

Plaintiff as defined by the ADA, and NYEL.

2

ELEVENTH:  Defendant Laterza was and is employed by UPS as the Manager at the Huntington Center

TWELVTH:   Laterza has and had the authority to hire, fire and discipline employees at UPS.

THIRTEENTH:  Laterza has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his retaliatory treatment against Plaintiff.

FOURTEENTH: Laterza aided, abetted, incited, compelled and/or coerced the acts against Plaintiff that are forbidden under NYEL.

FIFTEENTH: Laterza actually participated in the conduct giving rise to Plaintiff's retaliation claims and is thereby individually liable for his retaliatory treatment against Plaintiff under NYEL.

## FACTS

SIXTEENTH: Plaintiff engaged in protected activity when he filed a formal complaint of discrimination based upon his disability on August 14, 2012 and entered into a settlement agreement of the matter on November 11, 2013.

SEVENTEENTH:   Plaintiff had a good faith belief that he suffered from a disability as defined by the ADA, and that he was being discriminated against due to his disability, and therefore filed a complaint with the EEOC on December 16, 2011, and subsequently a pro se lawsuit in Federal Court on August 14, 2012.

3

EIGHTEENTH:          Plaintiff's August 14, 2012 pro se complaint alleged that he

suffered from a disability of an injured knee, and was subsequently discriminated against, and

retaliated against after he requested a reasonable accommodation of a truck with a lower step.

NINETEENTH:          Plaintiff's pro-se complaint was settled by the parties on

November 11, 2013.

TWENTIETH:          Therefore, UPS was aware of Plaintiff's protected activity of

complaining of discrimination and settling the dispute pursuant to the ADA, as they responded to

and eventually settled the lawsuit against them with Plaintiff in November 2013.

TWENTY-FIRST:          Almost immediately after the Plaintiff's pro se complaint was

settled, Plaintiff began to experience retaliation for his protected activity from Defendants.

TWENTY-SECOND: For the 2013 Holiday season, a temporary holiday driver informed

Plaintiff that he had put envelopes addressed to Plaintiff from his customers in Plaintiff's work

mailbox, and then witnessed Laterza take the envelopes out, open them, remove the cash and

throw the cards away.

TWENTY-THIRD:          This adverse act of taking Plaintiff's gift money was a spiteful,

willful act done in pure retaliation for Plaintiff's protected activity of the settlement of his

lawsuit.

TWENTY-FOURTH:          In addition, during New Years week 2013/2014, Plaintiff

used some sick days that he had available, however Defendants recorded Plaintiff as "unpaid"

for those days, causing Plaintiff to lose on or about $1,500.00.

TWENTY-FIFTH:          Defendants wrongfully denied Plaintiff pay for sick time that he

had in an act of retaliation.

4

TWENTY-SIXTH:    Another example of the retaliation Plaintiff experienced is that Plaintiff did not receive his settlement check from his pro se lawsuit until January 9, 2014, which was six weeks past the date when he was due to receive it, according to the terms of the agreement.

TWENTY-SEVENTH:       Upon information and belief, UPS purposely delayed the distribution of Plaintiff's check in an act of retaliation against him for the lawsuit settlement.

TWENTY-EIGHTH:  This was an adverse act against Plaintiff as a substantial amount of money he was due was being purposely held back from him in an act of retaliation.

TWENTY-NINTH:    On or about January 9, 2014, when Laterza handed Plaintiff his settlement check, he viciously told Plaintiff to enjoy the money because he promised he would be getting rid of Plaintiff.

THIRTIETH:  This adverse employment act, namely a specific threat from Plaintiff's supervisor, caused great fear and anxiety in Plaintiff at the prospect of potentially losing his job.

THIRTY-FIRST:     On the very same day, January 9, 2014, Plaintiff was summoned to his manager's office to be verbally reprimanded about poor performance.

THIRTY-SECOND:  Plaintiff was told he was not doing enough stops per hour.

THIRTY-THIRD:     This amounted to increased supervision as other similarly situated drivers in Plaintiff's territory that did not settle a lawsuit against Defendant were not being warned about their number of stops.

THIRTY-FOURTH:  Upon information and belief, Laterza, as Plaintiff's supervisor, was the person responsible for fabricating the accusations against Plaintiff in acts of retaliation for Plaintiff's protected activity.

5

THIRTY-FIFTH:     This amounted to an adverse act in that Plaintiff was reprimanded for fabricated reasons, and caused him greater stress in his work environment.

THIRTY-SIXTH:     This was clearly retaliation as this disciplinary meeting occurred on the same day that Plaintiff received his settlement check.

THIRTY-SEVENTH:     On the same day, in further retaliation for his protected activity, Plaintiff was also issued another written warning letter regarding poor attendance, specifically sick days taken.

THIRTY-EIGHTH:     Other similarly situated drivers in Plaintiff's territory are not formally reprimanded for taking sick days.

THIRTY-NINTH:     Part of the poor attendance reprimand of Plaintiff included an accusation that he arrived to work late.

FORTIETH:   However, Plaintiff traditionally commenced work at 9:00am, however the arrival time was changed to 8:50am while Plaintiff was out on medical leave, and he was not made aware of this change.

FORTY-FIRST:     Defendants' failing to notify Plaintiff of a change in the standard work hours is another act of retaliation in that now Plaintiff would be late to work each day, and be reprimanded for that.

FORTY-SECOND:     In yet further retaliation, the very next day, on January 10, 2014, Plaintiff was, again, summoned to a disciplinary meeting wherein he was written up for failing to properly record packages.

FORTY-THIRD:     The procedure to record packages was also changed while Plaintiff was out on disability leave, and Plaintiff was not notified of the change.

6

FORTY-FOURTH:   Failing to notify Plaintiff of the change in procedures was an act of retaliation as Plaintiff was now getting written up for violating a procedure he was not aware of.

FORTY-FIFTH:   Upon information and belief, Defendant notifies its employees when there are changes to the procedures and policies.

FORTY-SIXTH:   Incredibly, on the same day, January 10, 2014, Plaintiff was, for a third instance, written up for failing to follow safety procedures.

FORTY-SEVENTH:   This charge against Plaintiff was clearly fabricated, as he did nothing that was a violation of safety procedures, and nothing that his similarly situated UPS drivers also did not routinely do.

FORTY-EIGHTH:   The proximity in time from the settlement of Plaintiff's lawsuit and being handed his settlement check on January 9, 2014, to his being written up and reprimanded several times the very next day, clearly supports an inference of retaliatory conduct on the Defendants' part.

FORTY-NINTH:   On January 10, 2014, to retaliate even further against Plaintiff for the payment of settlement money to him, Defendants placed Plaintiff on a 72-hour notice of discharge, wherein they falsely accused Plaintiff of deliberately sabotaging his route to delay the completion of his work.

FIFTIETH:   This fabrication was concocted in a malicious and willful act of retaliation for Plaintiff's protected activity of commencing and settling his lawsuit.

FIFTY-FIRST:   In no way did Plaintiff sabotage his work to cause delays.

FIFTY-SECOND:   In fact, on this day, Plaintiff was sorting his packages so that they were in delivery address order in order to expedite the delivery process.  He brought this idea up to his supervisor, Tom.

7

FIFTY-THIRD:     Upon information and belief, Tom brought the idea of arranging the packages in delivery order to Laterza, and Laterza dismissed the idea.

FIFTY-FOURTH:     Upon information and belief, Laterza was setting Plaintiff up to fail because it would take Plaintiff longer to deliver his packages that were out of order.

FIFTY-FIFTH:     The willful retaliation continued on January 14, 2014 when Plaintiff was issued another written warning letter for allegedly violating the "10 hours off between shifts" rule.

FIFTY-SIXTH:     This allegation was also fabricated in that Plaintiff left work at the specific directive of his supervisor at 10:30 on the evening in question, and began work at 8:00am the next day.

FIFTY-SEVENTH:     Plaintiff was actually in the building and not on the road before 10:00pm that evening and his supervisor told him not to worry about punching out because he was not on the road.

FIFTY-EIGHTH:     Defendants then retaliated against Plaintiff by issuing him a warning letter regarding this situation.

FIFTY-NINTH:     This warning letter was a malicious act of retaliation against Plaintiff as he was getting reprimanded and written up with such extreme frequency within days of his receipt of his settlement check.

SIXTIETH:     The extremely close proximity of time between Plaintiff's receipt of his settlement check, and the adverse acts of his being constantly disciplined and reprimanded for unwarranted reasons demonstrates a legitimate inference of adverse retaliatory treatment.

SIXTY-FIRST:     Moreover, before Plaintiff's settlement with Defendants, it had been years since he was reprimanded at work.

SIXTY-SECOND:     Because of Defendants' ongoing and relentless harassment of Plaintiff due to the settlement of his prior lawsuit, Plaintiff felt stressed, overwhelmed and intensely anxious about reporting to work.

SIXTY-THIRD:     This added stress affected Plaintiff's life and health in an adverse manner in that he is unable to sleep, has frequent headaches, and is now actively seeking counseling due to the retaliation he is experiencing.

SIXTY-FOURTH:     Plaintiff's marriage is also suffering due the stress and retaliation he experiences at work.  In fact, Plaintiff's wife had a stress-induced seizure because of the effects the Defendants' harassment of Plaintiff is having on her marriage.

SIXTY-FIFTH:     This was all due to Defendants' malicious and willful retaliation against Plaintiff.

SIXTY-SIXTH:     Continuing on with the constant harassing and retaliating against Plaintiff, on or about January 24, 2014, Defendants again summoned Plaintiff to a disciplinary meeting with Laterza in attendance.

SIXTY-SEVENTH:   This meeting was again premised upon the fabricated reason of issues with Plaintiff's attendance at his job.

SIXTY-EIGHTH:    Plaintiff did not have attendance issues with his job in that he consistently reported to work and was on-time.

SIXTY-NINTH:     Upon information and belief, Laterza was willfully and continually fabricating excuses to have Plaintiff terminated.

SEVENTIETH:     A few days later, Plaintiff received a letter in his mailbox at work stating that he was being suspended.

9

SEVENTY-FIRST:   Plaintiff was not given a reason for the suspension, and was not aware of Defendants' reasons for suspending him.

SEVENTY-SECOND:       This adverse act of suspension was still further retaliation for the settlement of his lawsuit against Defendants.

SEVENTY-THIRD:   Plaintiff's other similarly situated co-workers were not subjected to this increased and excessive supervision and constant harassment in the workplace.

SEVENTY-FOURTH:       Another example of the excessive supervision Plaintiff was subjected to due to retaliation for the settlement of his complaint is that during the winter of 2014, Laterza informed the drivers not take any chances with safety with regards to icy roads and driveways, and that if a driver felt the driveway was un-navigable, to deliver the package the next day.

SEVENTY-FIFTH:   Plaintiff was the only driver, out of his similarly situated fellow drivers in the same territory, whose route Laterza checked every single house that was indicated as unsafe.

SEVENTY-SIXTH:   This was a willful attempt to justify the retaliatory and eventual termination of Plaintiff.

SEVENTY-SEVENTH:       On or about February 25, 2014, Mark Sullivan, Plaintiff's shop steward, notified Plaintiff that he had heard that UPS, and specifically Laterza, was looking to terminate him.

SEVENTY-EIGHTH:       This caused greater fear and anxiety for Plaintiff knowing that any day he may be terminated.

10

SEVENTY-NINTH:   Because Plaintiff had settled his lawsuit against UPS and received a settlement check, Plaintiff was continually and maliciously being harassed at his place of employment.

EIGHTIETH:   This daily harassment was such that a reasonable person would be dissuaded from making and settling a claim of discrimination against Defendant.

EIGHTY-FIRST:       On or about March 4, 2014, Plaintiff was injured while working, and Laterza attempted to interfere with the filing of Plaintiff's workers compensation forms.

EIGHTY-SECOND:   Specifically, Laterza provided Plaintiff with a false fax number to send documents regarding his claim to.

EIGHTY-THIRD:       Providing Plaintiff with a false fax number was a willful and malicious act of retaliation by Defendants in order to delay Plaintiff's workers compensation claim.

EIGHTY-FOURTH:   Furthermore, with regards to Plaintiff's workers compensation claim, Laterza told Plaintiff that he would call the Defendant's Risk Supervisor to alert her of Plaintiff's claim, however he never did.

EIGHTY-FIFTH:       In addition, Laterza told Plaintiff not to bother calling the Risk Supervisor himself because she was on vacation.

EIGHTY-SIXTH:       On or about March 14, 2014, when Plaintiff finally did call the Risk Supervisor, she informed him that she was never on vacation and was previously available to speak with.

EIGHTY-SEVENTH:       This is further evidence of the retaliatory treatment that Plaintiff experienced, and resulted in the adverse action of a delay in his workers compensation claim.

EIGHTY-EIGHTH:   Since the settlement of Plaintiff's lawsuit against Defendant, Plaintiff has been subjected to harassment, excessive supervision, undue reprimands, discipline, threats of termination, and suspension.

EIGHTY-NINTH:    This adverse treatment began immediately after the settlement of the lawsuit and Plaintiff's receipt of his settlement check, leading to a reasonable inference of retaliation.

NINETIETH:  Prior to filing this civil action, Plaintiff timely filed a written charge asserting retaliation within three hundred (300) days of the retaliation with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC").

NINETY-FIRST:  Plaintiff has filed this action prior to the expiration of ninety (90) days after receiving his Notice of Right to Sue from the EEOC.


**WHEREFORE**, Plaintiff demands a judgment against the Defendant as follows:

1.   For a money judgment representing actual damages for UPS' retaliation against Plaintiff due to his protected activity in violation of the ADA, in an amount to be determined by a jury;

2.   For a money judgment representing compensatory damages for UPS' retaliation against Plaintiff due to his protected activity in violation of the ADA, in an amount to be determined by a jury;

3.    For a money judgment representing emotional damages for UPS' retaliation against Plaintiff due to his protected activity in violation of the ADA, in an amount to be determined by a jury;

4. For a money judgment representing punitive damages for UPS' retaliation against Plaintiff due to his protected activity in violation of the ADA, in an amount to be determined by a jury;

5. For a monetary judgment of actual damages against UPS for its retaliation against Plaintiff in violation of NYEL.

6. For a monetary judgment of compensatory damages against UPS for its retaliation against Plaintiff in violation of NYEL.

7. For a monetary judgment of emotional damages against UPS for its retaliation against Plaintiff in violation of NYEL.

8. For a monetary judgment of actual damages against Laterza for his retaliation against Plaintiff in violation of NYEL.

9. For a monetary judgment of compensatory damages against Laterza for his retaliation against Plaintiff in violation of NYEL.

10. For a monetary judgment of emotional damages against Laterza for his retaliation against Plaintiff in violation of NYEL.

11. For equitable and injunctive relief;

12. For attorney's fees and costs; and

13. For such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this action.


Dated: Islandia, New York
       October 20, 2014

SCOTT MICHAEL MISHKIN, P.C.

By:    Kathleen A Tirelli, Esq.
      One Suffolk Square, Suite 240
      Islandia, New York 11749
      Tel:  (631)-234-1154
      Fax:  (631)-234-5048